(C.D. 4106)

BORDER BROKERAGE CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided October 26, 1970)

*Glad & Tuttle* (*George R. Tuttle* and *Hudson F. Edwards* of counsel) for the plaintiff.

*William D. Ruckelshaus*, Assistant Attorney General (*Herbert T. Posner* and *Gilbert Lee Sandler*, trial attorneys), for the defendant.

Before RAO, FORD, and NEWMAN, Judges

FORD, Judge: In this action, consolidated for the purpose of trial, plaintiff protests the classification of certain articles described as feeders and parts of a pneumatic conveyor system which were classified by the district director of customs under item 664.10 of the Tariff Schedules of the United States as parts of conveyors. Plaintiff claims the merchandise to be properly subject to classification under item 668.00 or 668.06 of the Tariff Schedules of the United States as ma-

chines for making cellulosic pulp, paper or paperboard or parts thereof respectively.

The pertinent statutory provisions read as follows:

Tariff Schedules of the United States: Schedule 6, Part 4, Subpart B:

664. 10 Elevators, hoists, winches, cranes, jacks, pulley tackle, belt conveyors, and other lifting, handling, loading, or unloading machinery, and conveyors, all the foregoing and parts thereof not provided for in item 664.05 _____ 10.5% ad val.

Tariff Schedules of the United States: Schedule 6, Part 4, Subpart D:

Machines for making cellulosic pulp, paper, or paperboard; machines for processing or finishing pulp, paper, or paperboard, or making them up into articles:

668. 00 Machines for making cellulosic pulp, paper, or paperboard_____ 7% ad val.

\* \* \* \* \* \* \*

Parts of the foregoing machines:

\* \* \* \* \* \* \*

Other:

668. 06 Parts of machines for making cellulosic pulp, paper or paperboard _____ 7% ad val.

The record consists of the official papers which were received in evidence without being marked as well as the introduction of five exhibits on behalf of plaintiff. In addition oral testimony was taken of two witnesses called on behalf of plaintiff.

Mr. E. F. Fischer, general manager of Aco Sales Division Limited, was called on behalf of plaintiff. The witness stated that the company he is employed by does engineering and sales of pneumatic conveying systems, particularly for paper mills. His duties include supervision of the engineering and manufacturing of the company and sales. He travels throughout the United States checking out equipment sold and starting up operations after installation. The merchandise at bar is familiar to him as he was involved in the design, manufacture and installation of it. He has been in this field since 1955 and prior to that he was in the diesel and aircraft industry. The witness is a graduate of a technical college in Austria.

A conveyor system is usually comprised of an intake silencer, a connection between the silencer and blower, a blower with drive components, a blower feeder connection, a blower feeder line, switching

station and discharge equipment such as a cyclone discharge deflector. Mr. Fischer is the holder of a Canadian patent on the air lock feeder. The United States patent is pending. The paper industry, based upon his experience, uses the 42- and 36-inch size feeders. The 30-inch size may be used in sawmills. The feeder involved introduces the chips which are fed in it to the pipe line and digestor. Two important features of the feeder, according to Mr. Fischer, are the lower velocity used which prevents damage to the chips and the replaceable stainless steel liner. The latter may be replaced in the field. Stainless steel is used in paper plants while most other applications use chrome plated liners.

The material is blown through the conveyor system either directly to the digestor or to a small storage area and then to the digestor which might hold a 20-minute supply. The continuous digestor, which cooks and steams the chips reduces them to fiber. A digestor requires 250 to 400 tons per hour for approximately a 15-minute period. If there is a stoppage of the digestor, it would require two days to start it up.

The bi-elbows have flat box backs which reduce excessive wear in the turns. The replacement of these require little time, without any loss in production.

The control panel is used to regulate the air flow. The chip load is controlled by an orifice. Prior to the advent of pneumatic conveyor systems, the paper industry used belt conveyors. However the pneumatic system proved more advantageous because of the lower installation costs and its flexibility after installation in adding of extensions or new lines.

The conveyor system does not perform any manufacturing or processing function, according to the witness. It is not only designed specifically for the paper industry but is specially designed for each particular customer's needs. While it may be used to convey other articles such as sugar, salt cubes, or coffee beans, it would not be economical. The witness knew of no other field which would use the large size units.

Mr. Ed Farnworth, sales manager of Aco Pneumatic Equipment, was next called on behalf of plaintiff. His duties include engineering, selling and arranging for installation of conveying equipment for the pulp and paper industry. He travels extensively and sold this type of articles to major pulp and paper mills in the States of Washington, New York, Maine, Alabama, Florida, Georgia, North Carolina, Tennessee, West Virginia, and Virginia. His customers include the largest group of paper and pulp producers in the United States.

In his travels he had observed not only his conveyor systems but those of other firms. In pulp and paper plants only the 36- and 42-inch size was used. He has also seen pneumatic conveyors used to transport

flour and sugar but they were extremely small being of a 2- or 4-inch size. The feeder is a rotary air lock which injects material into the air line without the loss of air from the conveying line. Other types of conveyors are designated as chain vibrating and roller.

While the system involved is considered a conveyor, it is not the normal type one would envision. The system does not make pulp or paper nor does it process or finish pulp, paper or paperboard. It is, however, essential to the operation of the pulp and paper manufacturing system. Other systems such as a belt system could be used but some form of conveyor is essential. Once installed, it is an essential component of the plant.

Based upon the record as made herein, with the exception of the feeder which will be dealt with *infra*, there appears to be no question that the imported articles are parts of pneumatic conveyor systems. We are also satisfied, notwithstanding some possible uses in other fields, that the conveyor systems of the larger sizes are designed for and chiefly used in the pulp and paper industry.

Plaintiff relies upon the case of *United States* v. *Superwood Corporation*, 52 CCPA 57, C.A.D. 858 (1965), which involves the proper classification of certain paper making machines including cross conveyors, chain conveyors and wet lap conveyors. Defendant contends that the case is not controlling, since the conveyor system involved herein is utilized prior to the manufacturing process, while those in the *Superwood* case, *supra*, were part of the manufacturing process.

We do not believe the position taken by defendant is tenable. In the case of *Antonio Roig Sucrs. S. En C.* v. *United States*, 56 CCPA 72, C.A.D. 957 (1969), the court held an electric crane permanently installed at a sugar mill which loaded sugar cane on to a conveyor which brought it into the plant for manufacturing "* * * to be the first step in the process of manufacturing sugar from the cane." The court further stated as follows:

> * * * The agricultural process and the transportation to the sugar mill have been completed. When the crane picks up the cane from the stockpile and starts it on its way into the factory, it seems only reasonable to us to hold that "manufacture" has begun.

By the same token it is reasonable to consider a conveyor which starts the chips to the actual manufacturing process as being included within the statutory language involved herein. The statutory provisions for "machinery for use in the manufacture of sugar" involved therein and "machines for making cellulosic pulp, paper or paperboard * * *" are quite similar. The term machinery is a broad term which is more

comprehensive than machine and includes a complex combination of mechanical parts. See Black's Law Dictionary, Fourth Edition. The term "machines for making paper" was considered in the *Superwood* case, *supra*, and it was held that a group of integrated machines for making paper fell within that classification. The use of the plural, here and in the prior legislation, is indicative of the fact that there is no single machine designed or sold for the manufacture of paper but that an integrated group of machines is required. *Bird Machine Company v. United States*, 51 CCPA 42, C.A.D. 835 (1964). Consequently, insofar as this case is concerned while there is a difference in language, the term "machines" is broad enough to encompass the conveyor system.

General Interpretative Rule 10(c)(ii) directs that comparisons are to be made between coordinate or equal provisions in determining the classification of an article which is described in two or more provisions of the Tariff Schedules of the United States. We therefore have a competition between parts of conveyors, an *eo nomine* provision, and parts of machines for making cellulosic pulp, paper or paperboard, a use provision. The basic rule of interpretation in this field of jurisprudence is that in the absence of legislative intent or when the competing *eo nomine* provision is more specific, a use provision prevails. *United States v. Electrolux Corporation*, 46 CCPA 143, C.A.D. 718 (1959). We have not been directed to any contrary legislative intent nor has our research discovered such intent.

However, it is apparent that the provision for parts of conveyors provides for the involved merchandise in a more specific and definite manner than does the provision for parts of machines for making cellulosic pulp, paper or paperboard. *United States (Lansen-Naeve Corp. a/c Albert Klingelhofer, Party-in-Interest) v. Simon Saw & Steel Company*, 51 CCPA 33, C.A.D. 834 (1964). Therefore, we are of the opinion, that the classification herein under item 664.10, Tariff Schedules of the United States, is correct and the protests are overruled.

With respect to the contention of plaintiff that the feeder is a machine, we are of the opinion that the record is insufficient for our determination of this question. The function of the feeder is described in the record but the operation is not fully developed. Accordingly, the claim in the protests with respect to the feeder is overruled.

Plaintiff having abandoned its claims as to entries 10888 of March 1, 1967 and 15533 of June 14, 1967 covered by protest 68/17764, and entries 5058 of September 27, 1967 and 5751 of October 10, 1967 covered by protest 68/61122, they are hereby dismissed.

Judgment will be entered accordingly.